UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

**GEORGE TAYLOR**,                                    :
                                                                      :
                                    Plaintiff,        :
                                                                      :
                -against-                             :        **MEMORANDUM & ORDER**
                                                                      :        18-CV-2004 (AMD) (MMH)
**POLICE OFFICER MICHAEL KARBAN** and   :
**POLICE OFFICER CARL BECKER**,           :
                                                                      :
                                    Defendants.        :

------------------------------------------------------------x

**ANN M. DONNELLY, United States District Judge:**

In this 42 U.S.C. § 1983 action, the plaintiff claimed that a police officer used excessive

force in arresting him and another officer failed to intervene to prevent the use of excessive

force. At the conclusion of the plaintiff's case at trial, I granted the defendants' motion for

judgment as a matter of law. This opinion expands upon the basis for that ruling.

## THE PLAINTIFF'S CASE

The plaintiff testified that on August 3, 2015, he was stopped at a stop sign when an

officer walked up to his car and asked him if he was wearing a seatbelt. (Apr. 17, 2023 Trial

Transcript ("T. Tr.") at 7).[1] The plaintiff explained that his seatbelt was "on," "just wasn't

clicked." (*Id.*) The officer asked to see the plaintiff's identification, but the plaintiff did not

have it with him, so the officer called for back-up. (*Id.*) Additional officers arrived and

discovered that the plaintiff's driver's license was suspended. The first officer arrested the

plaintiff, handcuffed him and "slammed" him "against the car." (*Id.* at 7, 11.) Another officer,

---

[1]  At his 2019 deposition, the plaintiff claimed that he was not driving a car when the officers stopped
him. He maintained that he was walking down the street when the officers stopped him and arrested
him for driving with a suspended license. (*See* T. Tr. 69 (reading the deposition into the record).)

who was "[a]bout five feet" away, just "stood there watching," and did not intervene.  (*Id.* at 18, 19.)

In his complaint, the plaintiff accused Sergeant Becker of failing to intervene.  However, at the trial, he did not say anything about Sergeant Becker's role in the arrest, or identify him. Indeed, the plaintiff mentioned Becker only once—in response to defense counsel's question, the plaintiff stated that he did not "know him by name."  (*See id.* at 79 (Q: "You also have no idea who Officer Becker is." A: "No.  I don't know him by name.").)  And when his attorney asked, "Which one . . . of those two police officers handcuffed you," the plaintiff pointed at the defense table, and identified the arresting officer as "[t]he one in blue."  (*Id.* at 6.)  Neither defendant was wearing blue.  On cross-examination, the plaintiff pointed at Officer Karban, and said, "It's two officers here and it's not the one with the beard so it has to be the other one.  That's the way I can remember him."  (*Id.* at 75.)  Defense counsel asked if the plaintiff actually remembered Officer Karban, or merely used the process of elimination; the plaintiff responded that he "kind of know[s] how he looks" and that Officer Karban had a "hairline" that the plaintiff could "remember."  (*Id.* at 75, 78.)[2]

After the plaintiff was handcuffed, "somebody else" shoved him into a police van without securing his seatbelt.  (*Id.* at 7.)  During the drive to the precinct, the plaintiff "flew from one side of the seat to the other side of the van."  (*Id.*)  Neither defendant was in the van.  (*Id.* at 67.) The plaintiff "banged [his] back and [his] shoulder when [he] fell in the truck."  (*Id.* at 8.)

Approximately forty minutes after the plaintiff arrived at the police station, he felt pain in his shoulder and knee and asked for an ambulance.  (*Id.* at 19.)  The plaintiff's description of his

---

[2]  At the deposition, the plaintiff testified that he did not remember if he was handcuffed, and could not describe what the arresting officer looked like, the officer's name, how many officers participated in his arrest or even if he spoke to the officers.  (*See* T. Tr. 76–78.)

pain and what caused it were inconsistent.  On direct examination—before his lawyer showed him his medical records—he testified that he had pain in his left shoulder and right knee.  (*Id.* at 9.)  When defense's counsel pointed to the medical records on cross-examination, however, the plaintiff said it was his left knee that was injured.  (*Id.* at 29.)[3]  And while the plaintiff testified at one point that he had pain because he was "slam[med]" into a police car, at other times, he attributed the pain to the "rough ride" to the precinct.  (*Id.* at 7, 21, 81; *see also id.* at 29 (stating that his left knee was hurt "when [he] was in the van" and "wasn't strapped in"); *id.* at 32–33 (testifying that he "told [emergency medical technicians] that [he] had pain" from when he "fell inside the van"); *id.* at 61 ("Inside, outside, it—it could be in—inside, too, because I said I fell in the van, I wasn't strapped.").)  The plaintiff also claimed that he could not remember precisely when the injuries occurred, because he had a heart transplant in 2016 and could not "tell . . . the story."  (*Id.* at 65; *see also id.* at 5, 11, 48, 49, 63.)  Finally, the plaintiff admitted that he "didn't feel that pain right" after being slammed into the car but only forty minutes later.  (*Id.* at 19, 63.)

On the plaintiff's request, emergency medical technicians ("EMTs") arrived at the police station and assessed his condition.  In their report, the EMTs listed the plaintiff's complaint as "swollen feet," "ankle pain" and "minor chest pain;" the report also said that the plaintiff "denies any other pain/discomforts."  (*Id.* at 31–32.).  They took the plaintiff to SUNY Downstate Hospital.  (*Id.* at 33.)

The plaintiff testified that he notified doctors of the pain in his knee and shoulder when he arrived at the hospital.  However, his medical records—which he introduced into evidence— reflect that the plaintiff's "Chief Complaint" at 2:17 a.m. was "Chest pain."  (*Id.*)  Another doctor examined the plaintiff at 2:33 a.m.; he also wrote, "Chief complaint: Chest pain," and

---

[3]  At the deposition, the plaintiff testified that the right side of his body was injured.  (T. Tr. at 51–52.)

recorded that the plaintiff had "normal range of motion" in his "limbs, arms, and legs." (*Id.* at 34, 39.) The notes from the next examination, at 4:02 a.m., are similar: "Acute coronary syndrome, stable angina." (*Id.* at 40.) And the same is true of examinations conducted at 7:22 a.m., 8:00 a.m. and 11:15 a.m. (*Id.* at 43–46.) It was not until 2:28 p.m. that the plaintiff first told the doctors that he was "violently banged into the police vehicle," injuring his left shoulder and left knee. (*Id.* at 48.) None of the medical records indicated any bruising or injury to his shoulder or his knee. (*Id.* at 39.) The plaintiff was diagnosed with cocaine induced coronary vasospasm and given "Tylenol and [a] painkiller;" he left the hospital against medical advice. (*Id.* at 23, 57, 58.) Police officers drove him back to the precinct, wrote him a "desk appearance ticket" and sent him home. (*Id.* at 23.) [4]

After the plaintiff rested, the defendants moved for judgment as a matter of law. They argued that the plaintiff presented no evidence whatsoever against Sergeant Becker, did not identify Officer Karban and did not establish that being shoved into the police car was the proximate cause of the injury to his shoulder or knee.

The plaintiff conceded that he presented no evidence against Sergeant Becker and consented to his dismissal. Accordingly, I granted Sergeant Becker's Rule 50 motion. *E.g.*, *Back v. Hastings on Hudson Union Free School District*, 365 F.3d 107, 122 (2d Cir. 2004) (holding that a plaintiff must show the personal involvement of each defendant to succeed on a § 1983 claim); *Corley v. Shahid*, 89 F. Supp. 3d 518, 523 (E.D.N.Y. 2015) (granting a Rule 50 motion because "plaintiff failed to identify a single defendant as either participating in, or allowing, the alleged assault").

---

[4] At the deposition, the plaintiff stated that he could not remember why he went to the hospital. (T. Tr. at 80.)

The plaintiff also conceded that he did not present sufficient facts to allow the jury to conclude that the arrest—as opposed to, for example, the van ride—caused his shoulder and knee pain.  Instead, the plaintiff proposed a new theory of damages: that the arrest aggravated his underlying heart condition.  For the reasons discussed below, I granted Officer Karban's Rule 50 motion as well.[5]

## DISCUSSION

Federal Rule of Civil Procedure 50 directs district courts to "grant a motion for judgment as a matter of law" if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1)(B).  The Rule "imposes a heavy burden on a movant," *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011), and before granting it, courts must review the record "as a whole," "draw all reasonable inferences in favor of the nonmoving party" and "disregard all evidence favorable to the moving party that the jury is not required to believe," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (internal quotation marks and citations omitted).

The plaintiff gave inconsistent testimony on a variety of issues, including on the location and nature of his injuries, and was contradicted by the medical records and his own deposition testimony, in which he claimed not to remember much of what happened the night he was arrested.[6]  And his testimony was likely insufficient to demonstrate Officer Karban's "personal

---

[5] Before I ruled on Officer Karban's motion, the plaintiff announced that he wished to dismiss his attorney and have a new attorney appointed to represent him.  I explained that there is no right to counsel in a civil case, and the plaintiff agreed to continue with his attorney.

[6] The plaintiff's claims at the summary-judgment stage were even more far-fetched.  In a March 2021 order, I dismissed the plaintiff's false-arrest claim, because I found that "no reasonable person would undertake the 'suspension of disbelief' necessary to credit the plaintiff's version of events"—that the officers arrested him for driving with a suspended license while he was walking on a sidewalk—

involvement" in the alleged violation, *Back*, 365 F.3d at 122 (citation omitted), because he never conclusively identified Officer Karban as the person who shoved him.  However, I did not reach those issues, because the plaintiff conceded that he did not establish that Officer Karban's conduct proximately caused his shoulder and knee injuries.  Since the plaintiff alleged no viable damages theory, I granted Officer Karban's Rule 50 motion.  *See, e.g.*, *Shuford v. Cardoza*, No. 17-CV-6349, 2023 WL 2706255, at *4 (E.D.N.Y. Mar. 30, 2023) (holding that plaintiff must demonstrate by a preponderance of the evidence that defendant's acts were the proximate cause of his injuries to recover under § 1983).

To be sure, the plaintiff proposed an alternative damages theory: that Officer Karban's conduct exacerbated his underlying heart condition, causing a cardiac episode and requiring hospitalization.  But in the five years since he filed the complaint, the plaintiff has never asserted this theory of liability—a fact the plaintiff also admitted.

As an initial matter, nothing in the record supports this theory.  On the contrary, the diagnosis of "cocaine induced coronary vasospasm" indicates that it was the plaintiff's cocaine use that caused his symptoms.  In any event, there were no grounds to permit the plaintiff to advance an entirely new theory of liability at this late stage in the litigation.  "When determining whether a plaintiff may introduce at trial evidence of a newly advanced damage theory, courts in this Circuit have applied the same factors relevant to a request for leave to amend a complaint pursuant to Fed. R. Civ. P. 15(a)."  *Roberts v. Ground Handling, Inc.*, No. 04-CV-4955, 2007 WL 2753862, at *3 (S.D.N.Y. Sept. 20, 2007) (collecting cases).  "Such factors include undue delay, prejudice to the opposing party, bad faith on the part of the party asserting the theory and

---

particularly because the officers correctly identified the car's make, model, color and license plate. (ECF No. 70 at 12, 14 (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005).)

the futility of the damage theory sought to be proved." *Id.* What the court said in *Roberts*—a case in which the plaintiff sought an amendment several weeks before trial—is equally true here: "To require defendant to incur additional costs and to change its strategy . . . because plaintiff has concocted a new theory . . . years into the litigation is simply not fair and would, in a real sense, unduly prejudice defendant." *Id.* at *5.

In this case, there was no discovery on the plaintiff's belated theory of damages. Thus, the defendants had no opportunity to consult an expert witness to determine whether a person with a chronic heart condition could develop an acute cardiac episode forty minutes after being slammed into a car (or after falling in a van). Similarly, the defense did not have the chance to determine the extent to which the plaintiff's use of cocaine was the only factor that led to his diagnosis of cocaine-induced vasospasm. Moreover, even if I ignored the obvious prejudice to the defense, there would be no practical way to give the defense the chance to "incur further cost" and "modify its defense strategy," *Roberts*, 2007 WL 2753862, at *5; the plaintiff raised his new theory during the trial—which the jurors had been told would last at most a week—after he rested, and only after being questioned by the Court about his theory of damages.

Under these circumstances, allowing the plaintiff to proceed on a completely new theory would have been unfair and unwarranted. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010) (explaining that "the prejudice to the opposing party resulting from a proposed amendment [i]s among the most important reasons to deny leave to amend" and that prejudice results when amendment "would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute" (cleaned up)); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 201 (2d Cir. 2007) (denying leave to amend after the close of discovery because otherwise,

"merits discovery will need to be reopened and the litigation will, in essence, start over—the same experts will likely need to produce new reports and be re-deposed" (cleaned up)).

## CONCLUSION

For these reasons, I granted the defendants' Rule 50 motion, and the Clerk of Court entered judgment against the plaintiff, dismissing the case.

**SO ORDERED.**

s/Ann M. Donnelly

_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
May 3, 2023